**292 A.2d 856.**

PROVIDENCE JOURNAL COMPANY *et al. vs.* WALTER J. SHEA, *Assistant Director of the State Department of Health.*

JULY 11, 1972.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

POWERS, J. This is a civil action to compel the defendant to make certain records in his custody available for examination and possible publication.

Walter J. Shea, hereinafter called defendant, is Assistant Director of the State Department of Health, and as such is the official charged with responsibility for preventing pollution of the waters of this state.[1] Among the statutory

[1]General Laws 1956 (1970 Reenactment) §46-12-1 in pertinent part reads as follows: "The term 'director' shall be held to mean the director of the department of health or any subordinate or subordinates to whom he has delegated the powers and duties vested in him by this chapter."

Although not discernible from the record, all parties to the instant action have proceeded on the proposition that responsibility for the enforcement and supervision of the provisions related to water pollution had been delegated to defendant.

344

provisions pursuant to which defendant performs his duties are those of G. L. 1956 (1970 Reenactment) §46-12-5, as amended by P. L. 1970, ch. 289, sec. 2.

This section reads as follows:

> "Investigation and hearing.—If the director shall have cause to believe that any person is violating any provision of this chapter, or any regulation, or order of the department of health adopted in accordance therewith it shall be his duty to cause such matter to be investigated. Before making any finding that a violation has occurred such person shall be granted a hearing. At all hearings the director shall receive evidence and hear witnesses in behalf of the person believed to be polluting water of the state. The requirement of such a hearing, however shall not apply to a violation of any rule or regulation adopted under §46-12-15."

This amendment making investigation records open to public inspection became effective on May 7, 1970. On December 28, 1970, Robert C. Frederiksen, a reporter for the Providence Journal Company requested defendant to permit him to examine all records relating to water pollution investigations conducted since January 1, 1967. This request was refused as was a subsequent demand made in writing by the attorneys for Frederiksen and his employers.

Consequently, on January 7, 1971, the instant action was commenced in the Superior Court with the filing of a complaint, captioned "Petition for Alternative Writ of Mandamus".[2] It was filed on behalf of the Providence Journal Company, Michael J. Ogden, executive editor of said company and Robert C. Frederiksen, the aforemen-

---

[2]Super. R. Civ. P. 81(d) expressly provides that actions to obtain relief by writ of mandamus shall be in accordance with said rules. In the pleading stages, the action does not fall within the specified exceptions of Rule 81(a), hence commencement of the instant action is governed by Super. R. Civ. P. 3.

tioned reporter. They will hereinafter be referred to as plaintiffs.

On the same day that the complaint was filed, a Superior Court justice issued an alternative writ of mandamus, ordering defendant to make the requested records available to plaintiffs forthwith or show cause if any he had for refusing.

The defendant filed an answer on January 14, 1971, in which he denied withholding from inspection any records which the public was entitled to inspect by virtue of said §46-12-5.

Rather, he averred that such records as were made public by the cited statute were held available for public inspection.

Later, on January 20, 1971, defendant moved to dismiss plaintiffs' cause of action and to quash the alternative writ previously issued. This motion was heard and denied on February 26, 1971.

Meanwhile on February 5, 1971, plaintiffs had propounded certain interrogatories, pursuant to the provisions of Super. R. Civ. P. 33. They were 14 in number and on February 15, 1971, defendant objected to all such interrogatories save the first which merely required defendant to state his office and title and the date on which he assumed the same. His objections to answering the remaining interrogatories were, in substance, that to do so would constitute granting relief sought and moreover would be onerous, requiring greater expenditure of time and money.

Pursuant to Super. R. Civ. P. 37(a), plaintiffs moved to compel defendant to answer. After a hearing on this motion, defendant was ordered to answer all interrogatories save those numbered five and seven, which if answered would, in effect, amount to furnishing plaintiffs the records which were the subject of the controversy. Thereafter, defendant supplied the answers called for by

the interrogatories ordered to be answered. They disclose, in pertinent part, that during the period commencing July 1, 1966 and ending June 30, 1970, there had been 3,586 reports of alleged pollution on all but 70 of which the files were closed.[3] They further disclose that no hearings were held in connection with such investigations although corrective action was ordered in 1,153 instances.

On this state of pleadings and answers to interrogatories, plaintiffs on April 16, 1971, moved for summary judgment under Super. R. Civ. P. 56, there being no genuine issue as to any material fact.

Thereafter, on May 3, 1971, an order was entered by agreement of the parties. It provided that defendant would forthwith make available to plaintiffs all records pertaining to the 3,516 completed files. This order further provided that decision on the motion for summary judgment with regard to the remaining 70 would be reserved, pending receipt and consideration of memoranda to be supplied by the parties.

Subsequently, on consideration of the memoranda submitted, the Superior Court justice granted plaintiffs' motion in toto and entered a judgment to that effect. From the entry thereof, defendant seasonably appealed to this court and, in connection therewith, obtained a stay from the Superior Court justice pending disposition of his appeal in this court.[4]

Before turning to a consideration of the conflicting con-

---

[3]The failure to include the last six months of 1970 and the first four months of 1971 resulted, as stated, from the fact that records are kept on the basis of the fiscal year July 1 through June 30, and the deficiency was not challenged by plaintiffs.

[4]This request for and granting of a stay apparently resulted from an abundance of caution. However, Super. R. Civ. P. 62(d) provides for an automatic stay with the claiming of an appeal. Consequently, the stay granted by the Superior Court justice is mere surplusage.

tentions advanced by the parties in connection with defendant's appeal, it is appropriate to note that we agree with the conclusion of the Superior Court justice and plaintiffs, that all that is involved in the instant litigation is judicial construction of §46-12-5, as amended.

As heretofore noted, defendant moved in the Superior Court to dismiss plaintiffs' complaint and to quash the alternative writ of mandamus theretofore issued on the ground that there were no records in his custody which by the terms of §46-12-5, as amended, must be available for public inspection. This is so, he argues, because, although there were 3,586 reports of pollution coming to the department, of which 1,153 called for corrective measures, no hearings were required.

Consequently, he reasons that since the records which the Legislature decreed were to be available for public inspection were records of investigations in the course of which hearings would be conducted, it follows that none of the 3,586 instances of reported pollution is the subject of a public record. This reasoning is based on a narrow construction of the following as it appears in §46-12-5, as amended:

> "The director shall maintain records concerning all investigations undertaken and findings made pursuant to this section. Such records shall be made available for public inspection and shall include the following information: (a) The names and addresses of persons investigated; (b) The date or dates of any hearing or hearings conducted with respect to such persons and the time and place of such hearings; (c) Any findings made by the director after the conclusion of such hearings."

We agree with the Superior Court justice's holding, in essence, that whatever support defendant's reasoning may derive from a strict construction of the quoted language, it was never the intention of the General Assembly to cloak the director with standing to withhold informative records by the simple expedient of resolving all reports of pollution without the formality of hearings.

Nevertheless, defendant argues that information of possible sources of pollution frequently reaches the department through rumor, surmise and crank complaints.

Reports of this nature, when received, he urges, in effect, do not constitute "cause to believe" that the person complained of is polluting the water of this state so as to qualify as a matter to be investigated within the meaning of the statute. He concedes that such a report does mandate department inquiry into the as yet unverified allegation. Should such inquiry result in revealing that the alleged violation was without foundation in fact, there has not, he contends, been an "investigation" that is the subject of a public record.

It seems apparent from the statistical data supplied by defendant in his answers to the propounded interrogatories that there were only 1,153 instances out of 3,516 inquiries completed where the initial inquiry led to a determination that the allegation of pollution was not unfounded. With regard to these 1,153 instances, it would appear, although from the record one can only presume, that the persons or corporations complained of took remedial measures in accordance with orders issued by the director without benefit of a hearing for which provision is made in §46-12-5, as amended.

The exact language of the last cited section having immediate materiality, is as follows:

> "Before making any finding that a violation has occurred such person shall be granted a hearing. At all hearings the director shall receive evidence and hear witnesses in behalf of the person believed to be polluting water of the state."

But this is not to say that a person whom the director, after inquiry, has cause to believe is polluting the waters of the state may not elect to forego a hearing and, so doing, agree to comply with such corrective measures as the director may order.

We agree with defendant that complaints, allegations and accusations that this or that person is polluting the waters of the state, are not, until checked out, cause to believe that the person complained of is in fact polluting or apt to pollute waters of the state. Such a complaint though does place on defendant the burden of determining what the facts are, and having made this determination, make a record of the same. He then has in his custody a record that is open to the public.

This is so, regardless of whether the complaint was found to be valid or totally lacking in merit. In either case, it becomes a record concerning a person investigated within the meaning of §46-12-5(a), as amended.

The result of what we are here saying is that, although defendant is not required to make known the names of persons regarding whom allegations of pollution have been made until he has an opportunity to acquire personal knowledge of the facts, he is required to make known the facts ascertained as well as such further steps that he is taking. This means that there are records which are open for public inspection, even though correcting measures are still being explored.

Applying this to the facts of the instant case, it is obvious that in 3,516 instances, defendant is custodian of records that are open to the public.

With regard to the remaining 70 instances, and complaints received since June 30, 1970, the test to be applied is whether such complaints, or any of them, have been explored by defendant so as to make the facts regarding them a matter of personal knowledge of which his depart-partment has made the required records.

We agree, in substance, with the Superior Court justice's conviction that, in deciding to make such records public, the General Assembly was of the opinion that the white light of publicity would tend to strengthen defendant's

hand in achieving a prompt and vigorous enforcement of the laws designed to keep the waters of the state free from pollution. With this in mind, we also think that the public is entitled to know the number of complaints as yet unchecked and the dates when they were received. As heretofore stated, however, when checked out, all of the information relative to such complaints make for records that are open to the public.

The defendant's appeal is denied and dismissed and, except as clarified as to persons named in complaints which remain unchecked, the judgment appealed from is affirmed.

*Edwards & Angell, Edward F. Hindle, John H. Blish,* for appellees.

*Richard J. Israel,* Attorney General, *W. Slater Allen, Jr.,* Asst. Attorney General, for appellant.